**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Edward Calvin SCHILLECI,**
**Defendant-Appellant.**

**No. 75–4362.**

United States Court of Appeals,
Fifth Circuit.

Jan. 17, 1977.

Julian R. Murray, Jr., New Orleans, La., for defendant-appellant.

Gerald J. Gallinghouse, U. S. Atty., John H. Musser, IV, Cornelius R. Heusel, Mary Williams Cazalas, Asst. U. S. Attys., New Orleans, La., for plaintiff-appellee.

Before AINSWORTH and RONEY, Circuit Judges, and ALLGOOD, District Judge.

ALLGOOD, District Judge.

This case involves the indictment and conviction of Edward Calvin Schilleci, Police Chief of Slidell, Louisiana, on three counts of conspiracy to intercept wire and oral communications in violation of 18 U.S.C. §§ 371, 2511 and § 2 (aiding and abetting) and two counts of perjury in violation of 18 U.S.C. § 1623. Following FBI investigation, the defendant Schilleci was summoned to testify before a grand jury concerning certain wire tapping and bugging activities in the Slidell area. Schilleci was indicted not only for wire tapping conspiracy and for bugging, but for perjury before the grand jury concerning his alleged lack of knowledge of the incidents. Following trial, the defendant was convicted on all counts and was sentenced to serve one year and one day on each count, the sentences to run concurrently. Schilleci's co-indictee, James Decker, was not tried, the Government having entered a "deferred prosecution" arrangement in his case.

Appellant raises the following issues in support of his contention that his conviction on all five counts be reversed and that his case be remanded for a new trial.

A. Did the trial court err in refusing to sever the perjury counts from the substantive counts?

B. Did the trial court err in refusing to strike surplusage from the indictment?

C. Did the trial court err in allowing Emmaline Hickey to testify as a rebuttal witness?

D. Did the trial court err in refusing to allow the defendant the right to present evidence in support of his motion for a new trial?

E. Did the trial court err in refusing to grant defendant's motion for judgment of acquittal as to Counts III and IV of the indictment?

F. Did the trial court err in its instruction to the jury regarding specific intent and ignorance of the law?

G. Did the trial court's violation of the "Mann Rule" constitute reversible error?

*Underlying Facts*

The defendant at the time of trial was the Police Chief of Slidell, Louisiana, and had been so for over seventeen years. He had been an officer for over twenty-seven years. Approximately two or three years prior to trial, the Slidell police had been given certain electronic equipment through an L.E.A.A. grant. The equipment was kept in the office of the Police Chief. For some while, the Slidell police had been attempting to apprehend a drug operator they thought operated out of a local bar, "Fooser's den." Having failed to make a case through the use of a confidential informant, a decision was made to tap the telephone at Fooser's Den. While the evidence is conflicting as to whether the Chief participated in making the decision, he did not deny that he was present when the decision was made, although he claims mere presence and not assent. The equipment was spread out in the Chief's office and several officers were called in by Sergeant Swann to discuss how to operate the equipment. Following a discussion in the Chief's office, Sergeant Swann and a representative of the telephone company met at 2:00 a. m. and installed the phone tap. Neither reported back to the Chief. After several days the tap was removed when it was learned that the narcotics operator no longer worked at Fooser's Den. Swann did not keep the Chief informed of what was going on at the time of the tap. No court order was issued authorizing the wire tap.

A second incident involved the "bugging" of the Clerk's office of the Slidell Court.

The Police Chief had installed an alarm button underneath the desk of the Clerk to be used in the event that a disturbance broke out in the Clerk's office. It appears from the evidence that the Police Chief had just fought a tough political contest in an effort to be re-elected. It was speculated that some of the campaign material most damaging to the Chief originated in the Clerk's office. At a meeting after the election, Patrolman Hickey and Schilleci discussed the installation of a microphone in the Clerk's office. The microphone was proposed as an alternative to the alarm button which was hit on several occasions by secretaries sitting down at the desk thereby causing false alarms. Hickey installed a microphone in the place of the button, using the same wiring, and installed a speaker in the dispatcher's office, as well as running wires to the Chief's desk intercom. When the microphone was discovered, the wires in the dispatcher's office were disconnected, making the system inoperative. Schilleci maintained his lack of knowledge or approval of the bugging operation.

When called before the grand jury to testify concerning the two incidents, the Chief testified that he had no knowledge of the wire taps, or the bugging, and maintained his innocence. The grand jury not only indicted him on the substantive counts, but also for perjury in denying his knowledge or approval of the acts.

### Discussion of the Issues Presented

#### A. *Severance of Perjury Counts*

The defendant claims that the trial judge erred in failing to sever the perjury counts from the substantive counts in the indictment because they arose from the defendant's testimony before the grand jury which was consistent with his plea of "not guilty." The defendant claimed that a trial on all the counts of the indictment would impermissibly create the impression that the claim of innocence had been rejected by another jury, thereby increasing the burden on the defendant to prove his innocence.

■ It should be pointed out that denial of a motion for severance under Federal Rules of Criminal Procedure, Rule 14, is reviewable only for an abuse of discretion. *United States v. Marionneaux,* 514 F.2d 1244 (5th Cir. 1975).

The case most closely on point to the issue raised is *United States v. Pacente,* 7th Cir., 490 F.2d 661, reversed *en banc* 503 F.2d 543 (7th Cir. 1974), cert. denied 419 U.S. 1048, 95 S.Ct. 623, 42 L.Ed.2d 642. In *Pacente,* a policeman was convicted for extortion and for perjury before the grand jury. In affirming the decision of the District Court, the Seventh Circuit *en banc* found no abuse of discretion in denying severance. Pacente contended that the fact that the jury was aware, through the indictment, that the grand jury did not believe his testimony "would discredit [his] denial at trial if he chose to testify, and would in any event tend to make the proof against him seem more persuasive." 503 F.2d at 547. While the Seventh Circuit initially found an abuse of discretion in failing to sever under these circumstances, the *en banc* court reversed, finding it an "unwarranted over-refinement to speculate that" the petit jury would be persuaded by the fact that the mere accusation had been made by the grand jury. Id.

We do not find it necessary to decide this issue. We merely urge caution and careful, deliberate consideration by the district courts should it again appear in a similar setting.

#### B. *Surplusage in Indictment*

#### C. *Allowance of Rebuttal Witness*

■ These two issues are also to be judged by the abuse of discretion standard. The defendant here complained that the indictment was too lengthy because it set out verbatim portions of the defendant's grand jury testimony rather than giving a short concise statement of the charges. The use of verbatim portions of grand jury testimony in perjury counts of an indictment is the normal manner in which most indictments are brought. The testimony set out those portions alleged to be false.

Sufficient testimony was given to show the context of the questions and answers. Under the terms of Federal Rules of Criminal Procedure, Rule 7(c), there was no abuse of discretion in failing to strike the alleged surplusage.

After the defense had rested its case, the Government called as a rebuttal witness the wife of Patrolman Hickey, who testified that she was present when the Chief discussed the bugging of the Clerk's office. The defendant objected because the testimony was not really rebuttal in nature, but was a continuation of the Government's case in chief. Again there was no abuse of discretion on the part of the trial judge. The conduct of the trial is exclusively within his province. The testimony of Mrs. Hickey, while repetitious of earlier testimony, was directly contradictory to that given by the defendant while on the stand. While it may have been a continuation of the Government's main case, it was also rebuttal. See, *United States v. Sadler,* 488 F.2d 434 (5th Cir. 1974). The trial judge did not commit error in allowing the testimony.

### D. *Presentation of Evidence in Support of Motion for New Trial*

The defendant argues that it was error for the trial court to deny his motion for new trial, contending that there was newly discovered evidence which he was allowed to present only through a "proffer of evidence." Motions for a new trial, and the processing of such motions are addressed to the sound discretion of the trial court. The court's decision will not be reversed without a showing of an abuse of that discretion. *United States v. Jacquillon,* 469 F.2d 380 (5th Cir. 1972), cert. denied 410 U.S. 938, 93 S.Ct. 1400, 35 L.Ed.2d 604. "In order to justify a new trial, the rule is that the evidence must in fact be newly discovered and that the movant must have exercised due diligence in discovering the evidence. It must not be merely cumulative or impeaching. Furthermore, the new evidence must be material and be such that it would probably produce an acquittal in a

new trial. *United States v. 41 Cases, More or Less,* 420 F.2d 1126 (5th Cir. 1970)." 469 F.2d at 388. In the instant case, the evidence proffered by Schilleci was not of such an overwhelming nature as to allow a finding of abuse of judicial discretion. The trial judge, in a rather lengthy opinion denying the motion for new trial, sets forth legally solid reasons for his denial on this point. His refusal to grant appellant's motion for a new trial was not error.

### E. *Denial of Judgment of Acquittal*

The defendant claims that the trial judge erred in refusing to grant the motion for a directed verdict of acquittal on the basis that the prosecutor failed to prove that a quorum of the grand jury was present when the indictment was voted on. This issue is raised for the first time on appeal and should be denied solely on this ground. In any event, the defendant stipulated orally that the grand jury was properly in session, giving rise, at least for appeal purposes, to the presumption that there was a quorum present. The denial of the motion is not plain error, if it is error at all.

### F. *Refusal to Give Complete Charge on Specific Intent*

One of the defendant's main defenses throughout the trial was his belief that the action he took was not a violation of the law. The defendant requested the trial judge to give the following charge, which is taken verbatim from § 13.04 Devitt & Blackmar, Federal Jury Practice and Instructions. The trial judge gave most of the charge, but left out the portion italicized.

It is not necessary for the prosecution to prove that the defendant knew that a particular act or failure to act is a violation of law. *Unless and until outweighed by evidence in the case to the contrary, the presumption is that every person knows what the law forbids, and what the law requires to be done. However, evidence that the accused acted or failed to act because of ignorance of the law, is to be considered by the jury in determin-*

*ing whether or not the accused acted or failed to act with specific intent, as charged.*

The defendant argues that since the crime was one of specific intent, the trial judge committed error in refusing to give the last sentence of the charge. It should be noted that the trial judge gave a written copy of his jury charge to each member of the jury to have to follow along as he read, and to carry into the jury room. Thus, the jury had the opportunity to give more consideration to separate portions of the charge, rather than to the total charge; and the jury was not instructed that the charge was to be considered by them as a connected series and viewed as a whole. Very soon after the charge was given, the jury requested the judge to clarify his charge, since the portion dealing with specific intent, and the language on presuming to know what the law forbids, "seems to contradict" each other.

In *United States v. Petersen*, 513 F.2d 1133 (9th Cir. 1975), the court addressed the question concerning the ignorance of the law charge. The case is very persuasive since the trial judge in the instant case stated in his post trial opinion that "ignorance of the law is not a defense to a criminal prosecution."

In *Petersen*, the jury sent the trial judge a note after three days of deliberation and numerous clarifications on intent-motive. The note asked, "Is ignorance of the law any excuse?" The judge wrote across the note, in what he termed a "bold hand", "ignorance of the law is not an[y] excuse." The Ninth Circuit criticized the judge's action:

> Appellants claim that the note the judge wrote to the jury saying that "ignorance of the law is not any excuse" was erroneous, misleading and contradictory. They are correct. As the trial judge accurately noted in earlier instructing the jury, *ignorance of the law is to be considered in determining whether there existed the specific intent necessary for a violation of the law charged.* While the principle has often been stated by the

courts that ignorance of the law is no excuse, its use in the circumstances of this case was at least misleading to the jury. The jury had previously indicated that it was having difficulty with the terms intent and motive, and *the judge's summary treatment of the meaning of ignorance of the law may have caused the jury to eliminate it as a factor affecting specific intent.* 513 F.2d at 1135. (Emphasis added).

In this case the jury never had the opportunity to consider the effect of lack of knowledge on the requisite specific intent since they were never charged they could so consider it. The ignorance of the defendant of the applicable law went to the heart of his denial of the specific intent necessary for a violation of the law. The failure of the trial judge to so instruct the jury is error.

### G. The Mann Charge

In this case the trial judge, in his charge on intent, charged the jury that, "It is reasonable to infer that a person intends the natural and probable consequences of what he does or knowingly fails to do unless some contrary intention appears from the evidence." In *Mann v. United States*, 319 F.2d 404 (5th Cir. 1963), the Fifth Circuit held that this charge improperly shifted the burden of proof to the defendant, and reversed the case on this "plain error." In recent years, the *Mann* charge has drawn increased comment from the Fifth Circuit.

In 1972 (in *United States v. Wilkinson*, 460 F.2d 725 [5th Cir. 1972]) we held that a *Mann*-type instruction, which arguably shifts the burden of proof, should not be given and that where its effect is not alleviated by the nature of the case and the remaining portions of the charge, the giving of it will be reversible error. *United States v. Anderson*, 523 F.2d 1192, 1197 (5th Cir. 1975).

In *United States v. Duke*, 527 F.2d 386 (5th Cir. 1976), Judge Morgan reviewed at length the history of the *Mann* rule. He noted that, in *Mann*, the charge went to the essence of the case, whereas in later cases the Fifth Circuit had held that the charge did not require reversal where the issue was

"objective conduct," not mental state, *Helms v. United States,* 340 F.2d 15 (5th Cir. 1964); where there was a curative charge immediately after the objectionable charge, *United States v. Jenkins,* 442 F.2d 429 (5th Cir. 1971); and, where the "overall effect of the charge" did not place the "burden upon the defendant to produce evidence to overcome a presumption of guilt." 527 F.2d at 392, quoting *United States v. Wilkinson,* 460 F.2d 725, 732 (5th Cir. 1972); see also, *United States v. Durham,* 512 F.2d 1281 (5th Cir. 1975) (looking to overall effect and other curative charges). To be sure, the language in *Mann* has been "followed, distinguished, explained and qualified." *United States v. Beasley,* 513 F.2d 309, 314 (5th Cir. 1975). There are a few guideposts to follow, although analysis of any *Mann* type charge must be made according to the facts and circumstances of each case.

 In the instant case, we believe that the giving of the *Mann* charge constituted error. First, the hinge-pin of the defendant's case was his lack of specific intent. The language about the reasonable inference that a person intends the natural and probable consequences of what he does should only be concluded to raise a presumption about a defendant's *general* intent. See LaBuy, *Manual on Jury Instructions in Federal Criminal Cases,* 33 F.R.D. 523 (1963). Although the trial judge in his post trial opinion states that it was his opinion that the charge, if reversible, only went to the essence of Counts I, II and IV, the conspiracy and perjury counts, thereby saving the case under the concurrent sentence doctrine. It is clear that both the wire tapping and perjury statutes require specific intent to be proved. Therefore, it would appear that if the charge was bad as to one count, that it was bad as to all of them.

 Second, since there was very little objective conduct on the part of the defendant, it appears that his mental state was a crucial issue determining his specific intent. The jury was presented with a prominent citizen who was charged with serious crimes. His testimony before the grand jury was partially presented as an attachment to the indictment. It is entirely reasonable to conclude that the jury expected the defendant to respond to the charges with more than the cloth of presumptive innocence. In fact, the defendant took the stand to testify. The jury was given a written copy of the jury charge to carefully peruse. More than usual, there was the potential that individual sentences and phrases carried more weight than the overall effect of the charge. In this light, the trial judge gave a charge on general intent on a specific intent crime, followed by the *Mann* language "unless the contrary appears from the evidence." As stated in *United States v. Duke, supra:*

> This court held [in *Mann*] that the part of the charge stating "So, unless the contrary appears from the evidence" . . . improperly shifted the burden of proof on the crucial issue of intent from the government to the defendant. Because the charge went to the essence of the case, we held it to be plain error justifying a reversal of the conviction, even though no objection to the charge had been entered at trial.[1] In addition, we held that even though other statements in the charge tended to place the burden of proof on the government, these statements could not cure the effect of the objectionable burden-shifting remark.

527 F.2d at 391.

In this case, the trial judge did not once tell the jury to view the charge as an integrated whole. He did instruct them that the burden of proof was on the Government, but this charge did not follow the objectionable *Mann* language. The charge used by the trial judge following the *Mann* language dealt with the difference between

---

1. In this case, the defendant did not object to the language of the charge before it was given, and in fact submitted similar language in his proposed charge on specific intent. Nevertheless, the issue was raised by the defendant in his motion for new trial, and its denial preserves the issue for appeal.

motive and intent. If anything, the objectionable general intent instruction was re-emphasized by the charge that the jury could "draw the inference that the defendant intended all the consequences that someone standing in like circumstances and possessing like knowledge should reasonably have expected to result."

## Conclusion

While it is generally correct that ignorance of the law is not an excuse to the commission of a crime, the peculiar circumstances of this case required the court to clarify the exact relationship of Schilleci's ignorance of the law to his defense. It is not asserted that his knowledge of the law was a necessary element of the offense, but rather that his lack of knowledge was circumstantial evidence tending to negate his active participation either in the conspiracy or as an aider and abettor. Schilleci maintained that he was not attentive during the discussion in his office relating to the tap of Fooser's Den and his reliance on the Louisiana statute, Article 322 of the Louisiana Criminal Code,[2] would lend credence to the claim of a police chief that he was inattentive during a conversation in which illegal activity was discussed. Furthermore, Schilleci admitted cautioning his men not to get caught, and his mistaken belief as to the legality of the activities would tend to support his explanation that he wanted them not to get caught by those under investigation rather than by other law enforcement personnel. In addition, the record contains several references to Schilleci's knowledge, or lack thereof, of state and federal wiretapping laws.

▆▆▆▆ Under these circumstances the jury should have been apprised of the relevance of Schilleci's ignorance of the law and been instructed that, though it did not constitute an excuse, they could consider it as evidence bearing on the credibility of his claim that he was not a knowing participant in the conspiracy or an active aider and abettor. Furthermore, the court did instruct the jury that the prosecution need not prove that the act was a violation of the law, but failed to counterbalance this charge with what, if any, use could be made of the defendant's ignorance of the law. Other factors combined to compound this error. First, the charge was submitted to the jury in writing for them to consider during their deliberations. While not error in itself, the practice is conducive to dissection of the charge by the jury and overemphasis of isolated parts rather than consideration of the charge as a whole. Second, the jury was never instructed to consider the charge as an integrated whole and the likelihood of undue concentration on a specific paragraph or sentence was, in all probability, greatly increased. Finally, the trial court charged the jury in language which was indeed condemned in *Mann v. United States,* 319 F.2d 404 (5th Cir. 1963).

▆▆▆▆ While we are hesitant to rely on any one of the above errors as constituting, in and of itself, reversible error, their combined effect, together with the unique factual situation presented, require reversal of these convictions. As the convictions on the perjury counts were necessarily dependent on the result reached in the other counts on the basis of erroneous instructions, affirmance is not required under the concurrent sentence doctrine. Accordingly, we remand for further proceedings in conformity with this opinion.

Reversed.

---

2. La.R.S. 14:322:

No person shall tap or attach any devices for the purpose of listening in on wires, cables, or property owned and used by any person, for the transmission of intelligence by magnetic telephone or telegraph, without the consent of the owner.

Whoever violates this Section shall be fined not less than ten dollars nor more than three hundred dollars, or imprisoned for not more than three months.

This Section shall not be construed to prevent officers of the law, while in the actual discharge of their duties, from tapping in on wires or cables for the purpose of obtaining information to detect crime.