UNITED STATES of America,
Plaintiff-Appellee,

v.

David BUSH, Defendant-Appellant.

No. 78–5296.

United States Court of Appeals,
Fifth Circuit.

July 18, 1979.

Rehearing and Rehearing En Banc
Denied Sept. 19, 1979.

Richard G. Lubin, W. Palm Beach, Fla., for defendant-appellant.

Karen L. Atkinson, Linda Collins Hertz, Asst. U. S. Attys., Miami, Fla., for plaintiff-appellee.

Before THORNBERRY, GOLDBERG and GEE, Circuit Judges.

THORNBERRY, Circuit Judge:

This is a direct criminal appeal. The appellant, David Bush, was charged in a seven count indictment alleging that Bush knowingly and willfully made false state- ·ments to a bank for the purpose of influencing a bank to advance funds, in violation of 18 U.S.C. § 1014.[1] The jury acquitted Bush of the first five counts but convicted him of the remaining two. Bush appeals these convictions asserting that there was a fatal variance between the indictment and the proof offered at trial and that the trial judge improperly refused to give certain requested charges. Finding no merit to Bush's claims, we affirm.

Bush was the bookkeeper, and later comptroller, of Century II, a company which built single family homes. The evidence viewed favorably to the government, *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), discloses that in 1975, Century II obtained a line of credit for the construction of single family homes

---

1. 18 U.S.C. § 1014 provides in pertinent part:

Whoever knowingly makes any false statement or report, or willfully overvalues any land, property or security, for the purpose of influencing in any way the action of . . . any bank the deposits of which are insured by the Federal Deposit Insurance Corporation, . . . upon any application, advance, discount, purchase, purchase agreement, repurchase agreement, commitment, or loan, or any change or extension of any of the same, by renewal, deferment of action or otherwise, or the acceptance, release, or substitution of security therefor, shall be fined not more than $5,000 or imprisoned not more than two years, or both.

from the First Bank West of Lake Worth, Florida. Pursuant to a loan agreement, a formula was established for the disbursement of the loan proceeds. The formula was represented by a checklist which bracketed the various stages of construction typical to the construction of a single family dwelling. As the construction advanced Bush was to submit a checklist and a letter requesting incremental draws. In this manner, the bank would advance funds roughly equal to the stage of construction. The government's proof on the two convicted counts shows that the appellant submitted checklists that falsely represented the stage of completion of two homes and that the appellant submitted letters requesting monies to which the company was not entitled.

Bush first argues that there was a fatal variance between the indictment and the proof at trial. In essence, the indictment charged that Bush submitted a letter requesting payment for construction that had not been done in violation of the construction loan disbursement schedule.[2] The government undertook this burden by proving that Bush submitted a letter to the First Bank West requesting "Draw 4 per enclosed control sheet, $3,000." The government offered testimony that Draw # 4 represented that the house was approximately 80% complete. In fact, the evidence demonstrated that the house was about 60% complete. Bush argues that there was no written loan disbursement schedule in effect and it was error for the trial judge to allow the government to prove that the checklists represented a part of the disbursal agreement.

■ There can be little doubt that the indictment as written is sufficient to charge a federal crime. The indictment fully sets out all of the elements of the offense.[3] *United States v. Slepicoff*, 524 F.2d 1244 (5 Cir.), *cert. denied*, 425 U.S. 998, 96 S.Ct. 2215, 48 L.Ed.2d 824 (1975). At trial the indictment must be such as to (1) inform the defendant of the charges against him so that he may present a defense and not be taken by surprise by the evidence offered at trial; and (2) protect against another prosecution for the same offense. *Russell v. United States*, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962); *United States v. Davis*, 592 F.2d 1325 (5 Cir. 1979).

■ We believe that there was no variance between the indictment and the proof. The indictment did not allege a "written disbursement schedule", it alleged a "disbursement schedule." While the appellant might have a mental image of a parchment document accompanied by official seals, nothing in the indictment, even by implication, would estop the government from proving that the checklists represented the

---

2. Count VI in its entirety reads:
   On or about September 17, 1976, in Palm Beach County, in the Southern District of Florida, the defendant, DAVID BUSH, in his capacity as comptroller of Century II Construction, Incorporated, did knowingly and wilfully make a false statement and report to First Bank West, Lake Worth, Florida, a bank insured by Federal Deposit Insurance Corporation under Certificate Number 21893–6, for the purpose of influencing the action of said bank in advancing funds pursuant to a Construction Loan Agreement, dated July 19, 1976, between the said First Bank West, and Richard Lusader, in that on or about September 17, 1976, the defendant did by letter submit to said bank a request for payment of Draw 4, in the amount of approximately $3,000 from funds held in escrow by said First Bank West pursuant to the terms of said Construction Loan Agreement, with the defendant Bush authorized to make draws in accordance with the construction loan disbursement schedule then in effect. Under the construction loan disbursement schedule then in effect, requesting Draw 4 meant that the house was approximately 80% complete, whereas in truth and fact, as said David Bush then and there well knew, the said construction draw request was false in that the house was approximately 60% complete. All in violation of Title 18, United States Code, Section 1014.
   Count VII is similar.

3. This is unlike the rule of some jurisdictions. *See Northern v. State*, 150 Tex.Cr.R. 511, 203 S.W.2d 206 (1947) (murder indictment held insufficient because indictment that alleged murder by "kicking and stomping" the victim should have alleged that "the accused stomped the deceased to death with his feet with shoes on." *Id.* at 207).

disbursement agreement.[4] Moreover, even if there is a technical variance, we cannot perceive the prejudice.[5] The government provided the checklists to the defense before trial. Therefore, the checklists could not have surprised the defense. *See United States v. Patton*, 594 F.2d 444, 446 (5 Cir. 1979) (prejudice necessary before variance fatal to conviction).

█ Next Bush argues that the trial judge improperly refused to give certain requested instructions. The appellant candidly admits that the essence of most of the requested instructions was given by the trial judge but that the trial judge refused to tailor the instruction so as to present the appellant's "theory of defense." Chief Judge Brown has ably addressed this argument in *United States v. Barham*, 595 F.2d 231, 244 (5 Cir. 1979):

> Barham relies on the numerous cases in this Circuit which hold that where there is any evidentiary support whatsoever for the availability of a legal defense, and the Trial Court's attention is specifically directed to that defense, it is reversible error for the Court to refuse to charge the jury concerning that defense. Moreover, the instructions must be sufficiently precise and specific to enable the jury to recognize and understand the defense theory, test it against the evidence presented at trial, and then make a definitive decision whether, based on that evidence and in light of the defense theory, the defendant is guilty or not guilty. Our cases do not hold, however, that a defendant is entitled to a judicial narrative of his version of the facts, even though such a narrative is, in one sense of the phrase, a "theory of the defense." Indeed, our cases hold just the opposite.

4. At oral argument, Bush stressed that in his view there was never an oral agreement to have the checklists represent the loan disbursement schedule. Of course, this is an evidentiary argument that the jury has found against the appellant. We will not disturb that determination.

5. Bush's reliance on *United States v. Lambert*, 501 F.2d 943 (en banc) (5 Cir. 1974), is misplaced. In *Lambert*, we recognized the three steps of a false statement case: (1) Did the

[footnotes omitted]. We find no error in the trial judge's refusing to give Bush's "theory of the defense" instructions.[6]

█ In Requested Instruction No. 12 Bush asked the trial judge to instruct the jury that Bush's statements, even if false, could not have been made for the purpose of influencing the First Bank West if the Bank's president, Wayne Robertson, knew the statements were false. This instruction was properly rejected for it is not the law. The words "for the purpose of influencing" define the quality of the required intent, they do not immunize a party in duplicity with a bank officer. *United States v. Braverman*, 522 F.2d 218 (7 Cir. 1975), *cert. denied*, 423 U.S. 985, 96 S.Ct. 392, 46 L.Ed.2d 302 (1975); *United States v. Niro*, 338 F.2d 439, 441 (2 Cir. 1964). While it is undoubtably true that 18 U.S.C. § 1014 benefits various financial institutions, the law's ultimate beneficiary is the United States. False statements given to insured banks have the potential to mislead the auditors charged with maintaining the federal standards. The government's interest in maintaining the vitality of its insurance programs mandates that all material false statements violate § 1014, even when the false statements are given with the knowledge, consent or duplicity of a bank officer.

At trial Bush introduced evidence that he met with Century II's corporate attorney in September and in November 1976 to discuss the legality of the draw procedures. The attorney told Bush that the procedure violated no law so long as Bush did not present a sworn affidavit. Based on this evidence Bush requested two separate instructions. The first instruction was taken from Devitt and Blackmar, Federal Jury Practice Instructions § 14.10.

defendant say what the indictment charges him with saying? (2) If he did, does it depart from the truth? (3) Was it material? In that case, we held that the indictment did not fairly apprise the defendant of what he is alleged to have said. There is no such problem in the instant case.

6. These include requested instructions 4, 7, 12a, 12b, 12c.

### Ignorance of the Law

It is not necessary for the prosecution to prove that the Defendant knew that the particular acts were a violation of the law. Unless and until outweighed by evidence in the case to the contrary, the presumption is that every person knows what the law forbids, and what the law requires to be done. However, evidence that the accused acted or failed to act because of ignorance of the law, is to be considered by the Jury, in determining whether or not the accused acted or failed to act with specific intent, as charged.

The second requested instruction called upon the jury to consider Bush's seeking the advice of counsel when determining if Bush acted willfully:[7]

### Action on Advice of Counsel

The Defendant claims that he is not guilty of willful wrongdoing because he acted on the basis of advice from his attorney.

If the Defendant before taking any action sought the advice of an attorney whom he considered competent, in good faith and for the purpose of securing advice on the lawfulness of his future conduct, then this evidence should be considered by you in determining whether the Defendant had the intent to commit the crime charged.

The trial judge refused to give the ignorance of the law instruction but substantially gave the advice of counsel instruction.

Bush now assigns this refusal as error.

---

7. A similar instruction can be found in Devitt and Blackmar, § 14.12.

8. An example of a general intent charge is found in Devitt and Blackmar § 14.01:

> To constitute the crime charged in the indictment there must be the joint operation of two essential elements, an act forbidden by law and an intent to do the act.
>
> Before a defendant may be found guilty of a crime the prosecution must establish beyond a reasonable doubt that under the statute described in these instructions defendant was forbidden to do the act charged in the indictment, and that he intentionally committed the act.

The requested instruction has recently been the source of much litigation in this circuit. No less than five cases have discussed this instruction either directly or indirectly. In *United States v. Schilleci*, 545 F.2d 519 (5 Cir. 1977), the defendant, an elected Louisiana police chief, was charged with wire tapping and perjury violations. The defendant argued at trial that it was his belief that his action was not a violation of law. The defendant requested the charge requested in the present case but the trial judge redacted that portion of the charge which allowed the jury to find lack of specific intent from ignorance of the law. We determined that the charge as given in *Schilleci* did not allow the jury to consider the effect of the defendant's alleged ignorance of the law on the required specific intent. 545 F.2d at 524.

Next, we held in *United States v. Granada*, 565 F.2d 922 (5 Cir. 1978), and *United States v. Schnaiderman*, 568 F.2d 1208 (5 Cir. 1978), that it was plain error for a trial judge to give a general intent charge[8] when the defendant was charged with a specific intent crime such as willfully failing to report the importation of over $5,000, 31 U.S.C. § 1058.

In our fourth case relevant to the present question, *United States v. Wellendorf*, 574 F.2d 1289 (5 Cir. 1978), the defendant requested the ignorance of the law instruction of *Schilleci*. The trial judge had properly instructed the jury as to the specific intent required and we distinguished *Schilleci*:[9]

> Defendant's second contention that the trial judge refused to instruct the jury

---

> As stated before, the law never imposes upon a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence.

9. In *United States v. Davis*, 583 F.2d 190, 194 (5 Cir. 1978), we noted a possible conflict between *United States v. Granada* and *Wellendorf*. *Granada* is distinguishable from *Wellendorf*, however, to the extent that the trial judge in *Granada* gave an erroneous general intent charge (which we held to be plain error), while the trial judge in *Wellendorf* gave the correct specific intent charge but failed to give the *Schilleci* ignorance of the law instruction.

that ignorance of the law may be considered on the question of specific intent likewise does not constitute reversible error. *United States v. Schilleci,* 5 Cir., 1977, 545 F.2d 519, on which the defendant relies, is distinguishable from the instant case. In *Schilleci* the trial judge specifically instructed the jury on the presumption that everyone knows the law though he omitted an instruction on the effect of a defendant's actual ignorance. Since no instruction on the presumption that everyone knows the law was given in this case, the confusion presented in *Schilleci* does not exist here. The validity of these instructions must be tested by examining the instructions in their entirety. *See United States v. Kalmanson,* 5 Cir., 1973, 481 F.2d 666. The jury charge given in this case was adequate to allow the jury to find absence of specific intent if they concluded that Wellendorf was ignorant of the law, the court having instructed the jury that "wilfully" means "a bad purpose either to disobey or disregard the law" and "a voluntary, intentional violation of known legal duty." 574 F.2d 1290, 1291.

Our most recent case in this line is *United States v. Davis,* 583 F.2d 190 (5 Cir. 1978). In *Davis* the defendants were charged with various gun-related violations which we held to require specific intent—a voluntary intentional violation of a known legal duty. 583 F.2d at 193. In one portion of his

charge the trial judge had correctly defined specific intent [10] but had flatly contradicted himself in a latter part of the charge.[11] We held that this confusing and inconsistent charge required reversal under the rationale of *Schilleci.* 583 F.2d 194.

Considering our cases, we feel confident that today's decision is controlled by *United States v. Wellendorf.* In the instant case, as in *Wellendorf,* the trial judge correctly charged the jury as to specific intent and willfulness. Furthermore, the other four cases in our series are distinguishable. In both *Schilleci* and *Davis* we found the charge deficient because portions of the charge were inconsistent as to specific intent. We have no inconsistent statements in the charge considered today. In *Granada* and *Schnaiderman,* we found plain error in the giving of a general intent charge for a crime that required specific intent. In the instant case the trial judge made no such plain error.

While we are satisfied that *Wellendorf* controls the present case, we wish to assign additional reasons beyond those articulated in *Wellendorf.* We undertake this task because the panel of this court which decided *United States v. Davis* noted a possible conflict between *Wellendorf* and *Granada.* 583 F.2d at 194.

First, the trial judge in the present case gave a complete instruction on the effect of advice of counsel.[12] This instruction clearly

---

**10.** The word willfully as used in this charge means that the act or omission or failure to act was committed by the Defendant knowingly, voluntarily and intentionally, and with knowledge that it was prohibited by law, and with the purpose to disobey or to disregard the law, and not by mistake, accident or in good faith or other innocent reason or motive.

The court, however, then went on to say:
An act is done knowingly if it is done willfully and intentionally, if done voluntarily and intentionally, and not because of mistake, accident or other innocent reason or motive.
583 F.2d 193.

**11.** Unless outweighed by evidence to the contrary, the law presumes that every person knows what the law forbids and what the law requires to be done. Therefore, the evidence that the Defendant acted or failed to act be-

cause of ignorance of the law does not constitute a defense.
583 F.2d 193.

**12.** The judge charged:
You will recall evidence that the defendant in presenting the draws requested relied upon advice from an attorney. Now, in that connection you are instructed if you find the defendant consulted an attorney before making the statement or report under consideration in order to ascertain the legality thereof and if you also find that the defendant in good faith supplied that attorney with a complete and accurate report of all of the material facts relating to the defendant's inquiry, and if you also find that thereafter the defendant in good faith acted strictly in accordance with the advice of his attorney, you may find that the defendant did not act willfully in

informed the jury that it could find that the defendant did not act willfully if he relied on the advice of counsel. *See United States v. Taglione*, 546 F.2d 194 (5 Cir. 1977). The appellant faults this instruction because it is contingent on a full disclosure being made to the attorney. In the appellant's view the mere seeking of advice from an attorney may go to negative specific intent and therefore in the appellant's view the instruction should not be an "all or nothing proposition." While we have serious doubts that the appellant's fine distinction requires the instruction he insists on, we have found an even more compelling reason why his proffered instruction is not required on the evidence of this case. Bush was charged with a seven count indictment. The jury acquitted on five counts and convicted on two. The evidence in this case clearly establishes that Bush sought the advice of an attorney in September 1976. Even assuming that there is some kind of dispositive difference between the two instructions, there is no error in this case because the false statements of which Bush was convicted [13] were made before Bush consulted an attorney.[14]

Last, we note that Bush was fully able to argue his lack of willfulness to the jury. Considering this full argument, the correct charge on specific intent and on advice of attorney, we do not think the failure to include one requested charge, different only in emphasis, requires reversal.

AFFIRMED.

---

making a false statement to the bank in question.

But on the other hand, if you find that the defendant failed to supply the attorney with a complete and accurate report of all of the material facts, or that the defendant failed to act strictly in accordance with the advice of his attorney, then it is no defense to the offenses charged that the defendant consulted with and received an opinion from an attorney.

13. The statements made after Bush had consulted an attorney were charged in the acquitted five counts. The assumption that the jury accepted Bush's consultation with an attorney defense would logically explain the jury verdict.

14. Of course, we realize that Bush could argue that he was ignorant of the law and his visit to the attorney reinforced this ignorance. However, Bush has not posited this theory in his brief and our reading of the transcript suggests that Bush does not rely on this possibility.