Nathan MANN, Appellant,

v.

UNITED STATES of America, Appellee.

No. 19544.

United States Court of Appeals Fifth Circuit.

June 25, 1963.

Rehearing Denied Oct. 10, 1963.

John J. Pichinson, Corpus Christi, Tex. (Luther E. Jones, Jr., Corpus Christi, Tex., on the brief), for appellant.

William L. Bowers, Jr., Asst. U. S. Atty., Woodrow Seals, U. S. Atty., Houston, Tex., for appellee.

Before HUTCHESON, WISDOM and GEWIN, Circuit Judges.

GEWIN, Circuit Judge.

This is an appeal from a judgment of conviction entered upon a jury verdict finding appellant, Nathan Mann, M.D., guilty of wilfully attempting to defeat or evade payment of income taxes owed by him and his wife for the years 1954, 1955 and 1956, in violation of 26 U.S.C.A. § 7201.[1]   Dr. Mann was indicted on three counts, each involving one of the years in question.   He contends that the evidence against him was insufficient to sustain the conviction, and that the instructions on wilfulness in the oral charge of the trial judge were fundamentally erroneous. Doctor Mann resided in Corpus Christi, Texas, where he conducted a general medical practice treating patients both in and out of his office.

The Government contends that for each year in question the unreported taxable income of Dr. Mann was reflected in two ways.   First, there were amounts of un-

---

1. This statute provides as follows: "[a]ny person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than $10,000, or imprisoned not more than 5 years, or both, together with the costs of prosecution."

reported income reflected by his bank deposits; and second, that unreported income was reflected by bond purchases made by Dr. Mann with money not taken from his bank account. While admitting the existence of the unreported taxable income as reflected by his bank deposits, Dr. Mann denies that he wilfully omitted income from his return, and contends that such omission was due to the inefficiency and negligence of his accountant.

As to the money used for buying the bonds, Dr. Mann claims, and this is corroborated by his wife, that the money came from cash gifts chiefly [2] from his father, and therefore, his omission of this money was not wilful evasion since these claimed gifts were not taxable. The jury did not accept his explanation, but found him guilty as charged. As to Dr. Mann's first contention, we hold that there was sufficient evidence of his guilt to support the jury's verdict, and the refusal to grant the motion for acquittal was not error.

Doctor Mann's bookkeeping system consisted of the maintenance of three separate books of entry including a "Daily Log" in which cash payments on account and the charges to patients' accounts were recorded; a "Journal" kept as a single entry book, to which were posted from the Daily Log receipts from patients, deposits to the bank account and checks drawn thereon; and a subsidiary ledger also showing charges to patients' accounts and their payments made against these charges, these figures also being taken directly from the Daily Log.

The Daily Log, according to Otto Kuehn, the accountant who did Dr. Mann's tax work, was the core of the doctor's accounting system. The failure to note a transaction or collection in the Daily Log would inevitably lead to its not being reported in Dr. Mann's income tax. There was testimony that Dr. Mann usually made the collections and reported them to the bookkeeper for posting in the Daily Log; and in many instances he posted the collections himself.

Certain exhibits introduced by the Government show that Dr. Mann made up the bank deposits, put them in the bank himself and the secretary posted the totals from the deposit slips as a credit to the Journal "Cash" account and a debit to the Journal "Bank" account. The "Fee" column from the Journal and data on rent, dividends and interest, separately supplied by Dr. Mann himself, were the sources of information from which Accountant Kuehn prepared the tax returns. The accountant, having no knowledge of the substance of the transactions reflected in the Daily Log as posted to the Journal, depended entirely upon information supplied by Dr. Mann or his office.

A special agent of the Internal Revenue Service began investigating Dr. Mann's accounts on February 25, 1958. The agent obtained the Journals, Daily Log, some other materials and familiarized himself with the internal procedures of Dr. Mann's medical office. This agent contacted thirty-five of Dr. Mann's patients of which six or eight furnished him with a reasonably complete record of their cash payments to Dr. Mann. In all cases the amount that the patient had actually paid was higher than the amount shown to have been paid, and recorded on the Daily Log. Then the agent analyzed Dr. Mann's bank deposits and came to the conclusion that his income tax returns did not reflect his true income.

A recent case by this court dealing with the sufficiency of the evidence to establish wilfulness in income tax cases is Windisch v. United States, 5 Cir., 1961, 295 F.2d 531. Windisch contended that tax evasion cannot be established merely by showing that the taxpayer failed to include items of income in his return. The Court said in affirming:

> "The principle is correctly stated, but these cases are distinguishable from the instant case. Unlike Pechenik [United States v. Pechenik, 3 Cir., 236 F.2d 844], for example,

2. Some gifts from others were also claimed, including Dr. Mann's father-in-law.

Windisch omitted specific items of income earned, the accountant was not engaged to make an audit, and the accountant relied upon Windisch to supply the necessary tax information as to income as well as to expenditures. The appellant can point, as defendants have done in similar cases, to the lack of certain badges of fraud. That is not enough. The question of wilfulness is for the jury. Considering the record as a whole, the evidence which was direct as well as circumstantial, supports the verdict and the judgment of the district court."

As in Windisch, the evidence in this case was sufficient to make out a case for the jury and the jury decided the question of wilfulness.

The Government introduced evidence both direct and circumstantial to show that the bonds in question were purchased by money received from Dr. Mann's patients. The evidence was clear that Dr. Mann purchased more than $15,000.00 worth of bonds during the years in question. However, when he was questioned about the bonds by Internal Revenue Agent Moore, he could only remember purchasing two $500.00 Series "E" Savings Bonds during the years in question. It was Dr. Mann's contention that he bought the bonds from money received as a gift from his father. At the trial, the Gift Tax Returns filed by Samuel Mann, Dr. Mann's father, were introduced into evidence. They showed gifts to Oscar Mann, Dr. Mann's brother, but none to Dr. Mann himself. The bank employee from whom the bonds were purchased testified that Dr. Mann purchased the bonds with crumpled currency taken from his pockets, and with checks from third persons which he endorsed. While this evidence may not be conclusive proof of wilfulness, it was sufficient to present a jury question as to whether or not the bonds were purchased with cash gifts or unreported taxable income.

A far more complex problem is raised by Dr. Mann's second contention, which relates to the following portion of the Court's oral charge:

"It is reasonable to infer that a person ordinarily intends the natural and probable consequences of acts knowingly done or knowingly omitted. So unless the contrary appears from the evidence, the jury may draw the inference that the accused intended all the consequences which one standing in like circumstances and possessing like knowledge should reasonably have expected to result from any act knowingly done or knowingly omitted by the accused."

No objection was made to the charge when given; but it is contended that it is so plainly erroneous that this court should notice the error under rule 52(b) F.R.Crim.P. The Government does not seriously contend that the above quoted portion of the charge, standing alone, is not erroneous. It claims that other portions of the charge rectified any error committed; and when the charge is read as a whole, the issue of wilfulness was fairly presented to the jury. The entire portion of the court's charge relating to wilfulness is printed in the margin.[3]

3. "In every crime there must exist a union of joint operation of fact and intent. The burden is always upon the prosecution to prove both act and intent beyond a reasonable doubt. Specific intent must be proved before there can be a conviction. Specific intent as the term itself suggests, requires more than a mere general intent to engage in certain conduct. A person who knowingly does an act which the law forbids, or knowingly fails to do an act which the law requires, intending with evil motive or bad purpose either to disobey or to disregard the law, may be found to act with specific intent. An act or failure to act is done knowingly if done voluntarily and purposely, and not because of mistake or inadvertence or other innocent reason.

"In considering the defendant's guilt or innocence you are instructed that it must be shown beyond a reasonable doubt that the defendant, Nathan Mann, wilfully and knowingly attempted to evade taxes as charged in Counts One, Two and Three, considering each count separately, with a specific intent to evade such taxes. In our law such specific intent means more

Dr. Mann argues that the effect of that portion of the charge of which he complains was to make the jury aware of a certain factual hypothesis and to instruct them that if they believed this hypothesis was established by the evidence, they were then authorized, absent opposing evidence, to infer that Dr. Mann's intent was tax evasion. This, he contends, is tantamount to an incriminating presumption which the jury, absent opposing evidence, could use as a substitute for proof. We agree.

In Morissette v. United States, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952), the defendant, while hunting on a government bombing range, carried away and sold three tons of used bomb casings. He was prosecuted for knowingly converting government property to his own use. The trial court refused to submit the question of wilfulness to the jury, holding that such intent was "presumed" from the defendant's act. In reversing the conviction, the court stated:

"We think presumptive intent has no place in this case. A conclusive presumption which testimony could not overthrow would effectively eliminate intent as an ingredient of the offense. A presumption which would permit but not require the jury to assume intent from an isolated fact would prejudge a conclusion which the jury should reach of its own volition. A presumption which would permit the jury to make an assumption which all the evidence considered together does not logically establish would give to a proven fact an artificial and fictional effect. In either case, this presumption would conflict with the overriding presumption of innocence with which the law endows the accused and which extends to every element of the crime. Such incriminating presumptions are not to be improvised by the judiciary. Even congressional power to facilitate convictions by substituting presumptions for proof is not without limit."

Identical charges, strikingly similar to the charge under consideration in the instant case, were involved in three cases, two of which were decided by this court. Berkovitz v. United States, 5 Cir., 1954, 213 F.2d 468; Wardlaw v. United States, 5 Cir., 1953, 203 F.2d 884; Bloch v. Unit-

than intentional or voluntary filing of a return that may be shown to be incorrect or false, if there were any such returns filed, for it must be shown beyond a reasonable doubt that such filing was accompanied by an evil motive and wrong purpose. Otherwise, you should find him innocent.

"If you find that the defendant, Nathan Mann, acted in good faith in filing one or all of such returns as described in the indictment, you shall find him not guilty as to the one or all of such counts, considering each separately, which were accompanied by such good faith, if any.

"The intent involved in this offense and required to be shown is not proved merely by filing a return that is false, but requires the specific intent on the part of the defendant involving bad purpose and evil motive, and that specific intent must be clearly inferred from the evidence and you must so find from the evidence beyond a reasonable doubt.

"Intent may be proved by circumstantial evidence. It rarely can be established by any other means. While witnesses may see and hear and thus be able to give direct evidence of what a defendant does or fails to do, there can be no eye-witness account of the state of mind with which the acts were done or omitted. But what a defendant does or fails to do may indicate intent or lack of intent to commit the offense charged.

"It is reasonable to infer that a person ordinarily intends the natural and probable consequences of acts knowingly done or knowingly omitted. So unless the contrary appears from the evidence, the jury may draw the inference that the accused intended all of the consequences which one standing in like circumstances and possessing like knowledge should reasonably have expected to result from any act knowingly done or knowingly omitted by the accused.

"In determining the issue as to intent, the jury is entitled to consider any statements made and acts done or omitted by the accused, and all facts and circumstances in evidence which may aid in determining state of mind."

ed States, 9 Cir., 1955, 221 F.2d 786. In all three cases the court charged:

> "The presumption is that a person intends the natural consequences of his acts, and the natural presumption would be if a person consciously, knowingly, or intentionally did not set up his income and thereby the government was cheated or defrauded of taxes, that he intended to defeat the tax."

Convictions in all three cases were reversed on appeal. The opinions held that the effect of the charge was to tell the jury that it could draw the conclusion that the defendant intended to defeat the payment of the tax from the mere fact that an incorrect return was filed; and resulted in a shifting of the burden of proof from the Government to the defendant. As stated in Berkovitz with reference to the charge:

> "It had, of course, told the jury in other parts of the charge that the defendant was presumed to be innocent until proved guilty beyond a reasonable doubt with full elucidation of what this meant. However, the error was in telling them that as a matter of law they could presume criminal intent from the circumstances described in the questioned charge, without at the same time telling them they must consider all the evidence including that offered by defendant to disprove that intent, that the burden of proof never shifted and the Government, in spite of those circumstances, was required to prove the guilt of defendant beyond a reasonable doubt."

■ The instructions in the instant case go beyond the bounds of the charge set out in the above cited cases. If the charge had ended when the jury was told that a person is presumed to intend the natural consequences of his own acts, when considered in the light of the charge as a whole, there would have been no error. When the words, "So unless the contrary appears from the evidence" were introduced, the burden of proof was thereupon shifted from the prosecution to the defendant to prove lack of intent. If an inference from a fact or set of facts must be overcome with opposing evidence, then the inference becomes a presumption and places a burden on the accused to overcome that presumption. Such a burden is especially harmful when a person is required to overcome a presumption as to anything subjective, such as intent or wilfulness, and a barrier almost impossible to hurdle results.

■ The quoted charge is subject to another vice. The statute involved, 26 U.S.C.A. § 7201, specifically provides that the crime of income tax evasion must be accompanied by a specific intent on the part of the accused to defeat or evade the tax, which must be proved by independent evidence. Spies v. United States, 317 U.S. 492, 63 S.Ct. 364, 87 L.Ed. 418 (1943). Under the instruction here involved, the jury is invited to speculate as to what any other person similarly situated to Dr. Mann and with like knowledge, would reasonably have expected to be the consequences of the conduct under consideration as shown by the evidence. The test is whether Dr. Mann himself wilfully attempted to evade or defeat the tax. The following charge was condemned in Chappell v. United States, 9 Cir., 1959, 270 F.2d 274.

> "Criminal intent is a necessary ingredient of the crime charged in the indictment, and before a verdict of guilty may be rendered you must find from the evidence, beyond a reasonable doubt, that the defendant intended to commit the offense against the United States charged in the indictment. In this connection, you are instructed that every person is presumed to intend the natural consequences of his own voluntary and deliberate acts. One who voluntarily and deliberately performs an act which, from our common experience, is known to produce a particular result, may be presumed to have anticipated and intended that result."

The court held that the quoted charge conflicted with the overriding presump-

**410**

tion of innocence with which the accused is endowed under the law.

Our attention is called to the case of Bernstein v. United States, 5 Cir., 1956, 234 F.2d 475, in which it was said that every charge of a presumption other than that of innocence is not reversible error in a criminal trial. It is not our holding that every charge using the word "presumption" is reversible error. We do hold that it is error to give a charge in a criminal case of this nature, the overall effect of which is to place a burden upon the defendant to produce evidence to overcome a presumption of guilt.

 We are not unmindful of the case of Legatos v. United States, 9 Cir., 1955, 222 F.2d 678, and Windisch v. United States, supra, which hold that when a charge as a whole fairly gives the law to the jury on the necessity of wilfulness in an income tax evasion case, that one isolated part of the charge that a person is presumed to intend the natural consequences of his acts, does not constitute prejudicial error. Even though the trial judge did give an accurate charge on the necessity of intent and the burden of proof, we hold that to leave the jury with that part of the charge complained of in this case was not cured by what was said elsewhere in the charge. Instructions to the jury must be consistent and not misleading. The fact that one instruction is correct does not cure error in giving another inconsistent one. Perez v. United States, 5 Cir., 1961, 297 F.2d 12.

Counsel for Dr. Mann did not object to the charge as required by Rule 30 F.R.Crim.P. The sole defense of Dr. Mann was his contention that he did not intend to evade or defeat, the tax imposed; and he denied that his conduct was wilful or that he had any evil motive or intent to defraud. We think that an error affecting such a vital aspect of the case is fundamental. Rule 52(b) F.R. Crim.P. provides:

"Plain Error. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

As stated in Bloch: "The error of the trial court is * * * fundamental and goes to the very essence of the case so we must under the rule take notice of it". As emphasized in Perez, it is never permissible to leave the jury with the idea that it becomes the duty of the defendant to establish his innocence. The charge in this case could very well have had that effect, and as such, we cannot allow the conviction to stand.

For the foregoing reasons, the judgment of conviction on all three counts is reversed and the case is remanded for a new trial.