**Norman H. HELMS, Appellant,**

**v.**

**UNITED STATES of America,**
**Appellee.**

**No. 20748.**

United States Court of Appeals
Fifth Circuit.

Dec. 28, 1964.

Rehearing Denied March 8, 1965.

---

Joe B. Goodwin, Beaumont, Tex., Baldwin & Goodwin, Beaumont, Tex., for appellant.

Richard B. Buhrman, Atty., Dept. of Justice, Washington, D. C., Leighton Cornett, Asst. U. S. Atty., Tyler, Tex., Louis F. Oberdorfer, Asst. Atty. Gen., Joseph M. Howard, Atty., Dept. of Justice, Washington, D. C., Wayne Justice, U. S. Atty., for appellee.

Before RIVES and BROWN, Circuit Judges, and NOEL, District Judge.

RIVES, Circuit Judge.:

The appellant-defendant was convicted on two counts of violating Section 7206 (1) of the Internal Revenue Code of 1954, 26 U.S.C.A. § 7206(1). Count 1 charged in substance that on January 29, 1959, the defendant willfully and knowingly made and subscribed a United States individual income tax return, verified by a written declaration that it was made under the penalties of perjury, in which, as he well knew and believed, he had understated his gross income. Count 2 made a like charge as to an income tax return made and subscribed on April 15, 1960.

A bill of particulars ordered on the defendant's motion restricted the charges as follows:

"III.

"The principal source of unreported gross income consists of omitted gross income from marble table collections for the calendar years 1958 and 1959. The government expects to introduce in testimony of various location owners, among others, that the collection tickets of Jefferson Novelty Company entered on the books and records of Jefferson Novelty Company and reflected on the income tax returns of the defendant were understated by a substantial amount. Location owners to be called to testify include among others: [Here 23 names were listed.]

"IV.

" * * * the defendant failed to report interest income of $54.50 in 1958 and $640.00 in 1959 received from H. J. T. K. Fontenot.

"V.

" * * * the defendant failed to report income from background music rentals received from Leo Hebert in 1958 in the amount of $120.00.

" * * * with the exception of the items hereinabove listed it does not intend to contest any other items of income or expense as reported on the defendant's 1958 and 1959 income tax returns."

During the years in question, the defendant did business as Jefferson Novelty Company, which owned and operated juke boxes, shuffle boards, and pinball machines also called marble tables. These machines were operated by dropping coins in a slot, and were placed in such places as taverns, bars and restaurants under arrangements by which the money dropped in the juke boxes and shuffle board machines would be split fifty-fifty between the location owner and the defendant. The pinball machines or marble tables were used for a form of petty gambling and took in more money. If a player beat the game, an electrically operated meter would register the number of free games won, which the player could either use at once or for which he would be paid by the location owner at the rate of 5 cents per game. As to these pinball machines, the agreements were that the location owners would first be reimbursed for the amounts paid out as shown by the meter and then would be paid 40% of the remaining money taken in by the machine, leaving 60% of such remainder for the defendant.

During the years in question, one Albert Borel, an employee of the defendant, would call not less than once a week, and sometimes more often, on each of the various locations, "rob" the machines, and deliver to the location owner his share of the contents. Borel was the government's "star" witness. He testified that, on the defendant's instructions, he made two sets of records when he "robbed" the pinball machines. One set showing the true amounts would be signed by the location owner; the other showing fictitious lesser amounts, made up by Borel "out of his head," would also be signed by the location owner. The location owner would be paid his 40% share of the winnings as shown by the true tickets, but would retain a copy of the false ticket only. Borel testified that he would sometimes check in to the defendant and sometimes to the bookkeeper and that he turned in both sets of records and all of the money that he had picked up.

Only seven of the twenty-three location owners listed in the bill of particulars were introduced by the government. They testified that their 40% share of the collections from the pinball machines ranged from $8.00 to $50.00 higher than the amounts shown on the false tickets.

The true tickets showed the meter readings of the pinball machines, but the false tickets did not. There was evidence from other witnesses that the false tickets which did not show the meter readings were the ones used in posting the

defendant's books, and in making his income tax returns.

The government failed to prove the 1958 interest income of $54.50 as listed in its bill of particulars, but did offer proof as to part of the 1959 interest income of $640.00 so listed. Those interest items are extremely small as compared to the collections from the pinball machines. The government's evidence did not go beyond its bill of particulars. The defendant introduced no evidence other than his cross-examination of the government's witnesses.

■ In instructing the jury, the court made no reference to the bill of particulars. The defendant objected and insisted that the jury should be limited to a finding supported by items listed in the bill of particulars. The government does not quarrel with the proposition that the effect of the filing of a bill of particulars is to confine the government to proof of the transactions there contained. It points out that there was no evidence tending to show defendant's receipt of unreported income except with respect to the matters listed in the bill of particulars; and that that was not true in the case relied on by the defendant, People v. Davis, 269 Ill. 256, 110 N.E. 9. In the present case, there was no need to warn the jury not to consider evidence of unreported items not listed in the bill of particulars because there was no such evidence. Such an instruction may have been misleading or confusing to the jury, and the judge was well within the bounds of his discretion in refusing to so charge the jury.

In the course of his oral charge to the jury, the judge employed the following form or boiler-plate instruction:

"It is reasonable to infer that a person ordinarily intends the natural and probable consequences of acts knowingly done or knowingly omitted. So, unless the contrary appears from the evidence, the jury may draw the inference that the defendant intended all of the consequences which one standing in like circumstances and possessing like knowledge would reasonably have expected to result from any act knowingly done or knowingly omitted by the defendant. In determining this issue of intent the jury is entitled to consider any statement or acts done or omitted by the defendant, and all facts and circumstances in the evidence which may aid in its determination of the state of his mind."

That is the same instruction which this Court in Mann v. United States, 5 Cir. 1963, 319 F.2d 404, 407–410, held to be plain error requiring reversal despite lack of objection.

The government earnestly argues that the charge is a correct statement of the law, that the Mann case was wrongly decided and should be overruled. It points also to the distinctions as to similar charges made both by this Court and by other courts. See Sherwin v. United States, 9 Cir. 1963, 320 F.2d 137, cert. denied, 375 U.S. 964, 84 S.Ct. 481, 11 L.Ed.2d 420; Estes v. United States, 5 Cir. 1964, 335 F.2d 609, 616; United States v. Denton, 6 Cir. 1964, 336 F.2d 785, 788; compare Edwards v. United States, 5 Cir. 1964, 334 F.2d 360, 366. We need not review the holding of the Mann case for, as we will show, that case is clearly distinguishable from the present case.

■ In holding that the giving of the instruction was plain error, we were careful to point out in Mann that "[t]he sole defense of Dr. Mann was his contention that he did not intend to evade or defeat, the tax imposed; and he denied that his conduct was wilful or that he had any evil motive or intent to defraud." 319 F.2d at 410. The present case presents the opposite extreme. If the defendant actually instructed Borel to prepare the two sets of records and used the false tickets in making his income tax returns, there cannot be much doubt about his willfulness or criminal intent. While in both cases the government bore the burden of proving beyond a reasonable doubt the defendant's willfulness or criminal intent, in the Mann case the

purely mental state was the crucial issue while here the contest centers about objective conduct, the preparation of two sets of records and the use of the false tickets in making defendant's income tax returns.

■ The defendant was represented by able counsel who carefully reserved many objections to the court's oral charge requiring some five pages of the typed record for their statement, but failed to object to this instruction. The ordinary rule is that, "No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection." Rule 30, Fed. R.Crim.Proc. Most errors lie somewhere in-between those which are harmless [1] and those which are "plain error." [2] "Plain error" depends upon the peculiar facts and circumstances of each case. In the present case it does not appear that any error in giving the instruction affected substantial rights of the defendant, and any such error does not rise to the dignity of "plain error."

■ Three other claimed errors were argued for the first time in a supplemental brief filed by defendant on the morning of the oral argument. As the government points out, that is not within the time prescribed by Fifth Circuit Rule 24. However, we have considered those contentions and now discuss the only one which appears to have any substance.

■ One of the location owners testified, without objection, that the defendant had explained that the location owner would get 40% of the pinball game receipts and the defendant would get 40%, and 20% would go to a Mr. Moore, the Assistant Chief of Police in Port Arthur, "And I said, 'Why to Mr. Moore?' and he said, 'Because we have to give friend.'" Defendant's counsel referred to that testimony in his oral argument to the jury as follows:

"* * * 'Oh, this wealthy Ted Helms' is going to call a person like Bootsie McGee on the telephone and tell her, 'Oh, please, please, you're only getting 40%; I'm only getting 40% it's because Mr. Moore is getting 20%.' Boy, didn't Bootsie have fun. Didn't she love to sit in that chair? Wasn't she enjoying it?"

When his turn came, the Assistant United States Attorney responded as follows: "Do you believe in good law enforcement? Do you believe in a man like Ted Helms who got his income the way the evidence in this case shows, who in order to operate, according to the evidence in this case, had to corrupt a public official—(interrupted)."

At this point defendant's counsel objected and the court overruled the objection. While the issue was not pertinent and the argument should not have been made, it was nonetheless based on the evidence and was a fair response to the argument of defendant's counsel. The district court did not abuse its discretion in overruling objection to the argument.

We find no reversible error, and the judgment is

Affirmed.

---

1. Where the *negative* is established that the error does *not* affect substantial rights. See 28 U.S.C.A. § 2111; Rule 52 (a), Fed.R.Crim.Proc.; Kotteakos v. United States, 1946, 328 U.S. 750, 751, 764, 765, 66 S.Ct. 1239, 90 L.Ed. 1557.

2. Where the *affirmative* is established that the error *does* affect substantial rights. See Rule 52 (b), Fed.R.Crim. Proc.