UNITED STATES of America,
Plaintiff-Appellee,

v.

Ronald Edison ROBERTS, a/k/a "Ron Roberts," and Charles Carmen Mancini, Defendants-Appellants.

No. 76–1076.

United States Court of Appeals,
Fifth Circuit.

Jan. 26, 1977.

Rehearing and Rehearing En Banc Denied March 29, 1977.

J. Hue Henry (Court-appointed), Athens, Ga., for Roberts.

Theodore S. Worozbyt, Atlanta, Ga., for Mancini.

John W. Stokes, U. S. Atty., Atlanta, Ga., Richard S. Stolker, Atty., Dept. of Justice, Washington, D. C., William L. McCulley, Dept. of Justice Strike Force, Atlanta, Ga., Ivan Michael Schaeffer, Atty., Appellate Sect., Crim. Div., Shirley Baccus-Lobel, Washington, D. C., for plaintiff-appellee.

Before AINSWORTH and RONEY, Circuit Judges, and ALLGOOD,* District Judge.

AINSWORTH, Circuit Judge:

Appellants Roberts and Mancini were convicted on both counts of a two-count indictment, charging them with conspiracy to collect an extension of credit by use of extortionate means, and with use of extortionate means to collect an extension of credit, in violation of 18 U.S.C. §§ 2, 894. The charges grew out of an attempt by Mancini, a bookmaker, and his codefendant, Roberts, to collect on a gambling debt owed Mancini by one David Madison. Appellants raise three issues on appeal.

* Senior Judge for the Northern District of Alabama, sitting by designation.

First, Roberts alleges error in the findings and conclusions of two federal magistrates, adopted by the trial court herein, with respect to the jury-selection process in the Northern District of Georgia, under which the members of his petit jury panel were selected. Roberts challenges the process as being violative of the Jury Selection and Service Act of 1968, 28 U.S.C. § 1861 *et seq.*, and the local jury-selection plan. The same issue is raised in *United States v. Davis*, 5 Cir., 1977, 546 F.2d 583, which we also decide today. We incorporate herein the holding of that opinion as to jury selection and, accordingly, reject appellant's argument. Second, appellant Mancini challenges his conviction on the ground that 18 U.S.C. § 894, pertaining to the collection of extensions of credit by extortionate means, was not directed to the collection of gambling debts. Third, Roberts objects to the trial court's instruction to the jury on the issue of specific intent.

The extortionate-credit victim, Madison, was employed by a supermarket chain in Atlanta, Georgia. He met Mancini in September 1974 and acquired a betting number from an associate of Mancini's. Thereafter, Madison began placing bets on sports events, and would meet Mancini on a weekly basis to settle up their account. Madison became indebted to Mancini for the week ending February 15, 1975, after which time he quit betting. According to Madison, the amount owed was $420, while Mancini testified that the amount was $4,020. Madison did not pay Mancini the following week, as had been their custom, and, in fact, the debt remained unpaid for several weeks. Madison testified that Mancini spoke to him about payment of the debt and, when Madison said that he did not have the money and would require more time to pay it, Mancini said that he was going to turn the debt over to someone else. Shortly thereafter, Roberts contacted Madison. Madison testified that Roberts spoke to him on a number of occasions, both in person and on the telephone, and that Roberts threatened him with physical violence if he did not pay the debt. At trial, there was also a tape recording of a telephone conversation introduced into evidence in which Roberts threatened Madison with harm to his person, his wife's person and his reputation. Furthermore, Madison testified, Roberts informed him that the debt was going up $200 a day, and later told him that the debt had gone up to $4,020. Mancini testified that he did not threaten Madison and that he (Mancini), assuming Madison might respond more positively to a stranger, employed Roberts to try to collect the debt. Roberts was to collect a 25% commission on the amount he collected. Mancini further testified that he did not agree with Roberts that threats would be used in attempting to collect the debt. Roberts admitted making the telephone call, but denied that he intended to threaten or to harm anyone. He attributed his remarks to drinking, which he said exacerbated his diabetic condition, thus making him "high".

The statute penalizes conspiracy or knowing participation "in any way . . . in the use of any extortionate means . . . to collect or attempt to collect *any* extension of credit." 18 U.S.C. § 894(a)(1) (emphasis added.) The chapter on extortionate credit transactions further provides:

(1) To extend credit means to make or renew *any* loan, or to enter into *any* agreement, tacit or express, whereby the repayment or satisfaction of *any debt or claim*, whether acknowledged or disputed, valid or invalid, and however arising, may or will be deferred.

.     .     .     .     .     .

(7) An extortionate means is any means which involves the use, or an express or implicit threat of use, of violence or other criminal means to cause harm to the person, reputation, or property of any person.

*Id.* § 891 (emphasis added).

The broad statutory language plainly encompasses a debt arising out of a gambling transaction. *United States v. Andrino*, 9 Cir., 1974, 501 F.2d 1373; *United States v. Briola*, 10 Cir., 1972, 465 F.2d 1018, *cert. denied*, 409 U.S. 1108, 93 S.Ct. 908, 34 L.Ed.2d 688 (1973); *United States v. Keres-*

*ty,* 3 Cir., 1972, 465 F.2d 36, *cert. denied,* 409 U.S. 991, 93 S.Ct. 340, 34 L.Ed.2d 258. In fact, the enactment has been applied specifically to a debt emanating from a bookmaking operation. *See Briola, supra.* The legislative history of the statute, furthermore, shows a congressional intent to include gambling within the statutory proscription. *See* H.R.Rep. No. 1397, 90th Cong., 2d Sess. 31 (Conference Report), *reprinted in* [1968] U.S.Code Cong. & Admin.News pp. 2021, 2029. Appellant argues that the statute reaches only loansharking activity. The cases offered in support of that proposition [1] all involved loansharking and, therefore, referred to such activity; however, there is nothing in those cases which suggests that Congress' concern was exclusively with loansharking. In *Perez v. United States,* 402 U.S. 146, 91 S.Ct. 1357, 28 L.Ed.2d 686 (1971), upon which Mancini also relies, the Supreme Court held that Congress could regulate "extortionate credit transactions" as a "class of activities." 402 U.S. at 153–54, 91 S.Ct. at 1361. The reasoning of *Perez* and its progeny, *e. g., Andrino, supra* ; *United States v. Annerino,* 7 Cir., 1974, 495 F.2d 1159; *Keretsy, supra,* makes clear that the instant transaction is within the covered class; the constitutionality of the statute as so applied has been established since *Perez.*

■ Roberts contends that the district court's instruction to the jury on specific intent improperly shifted to the defendant the burden of proof as to this issue. Roberts concedes that he made a threatening phone call to Madison which was monitored by the FBI and played at trial. His sole

defense is lack of the requisite intent. The disputed charge instructed the jury as follows:

[I]t is reasonable to infer that a person ordinarily intends the natural and probable consequences of facts [sic] knowingly done or knowingly omitted, and so unless the contrary appears from the evidence, you, the jury, may draw the inference that the accused and each of them intended all the consequences which one standing in like circumstances and possessing like knowledge should reasonably have expected to result from any act knowingly done or knowingly omitted.

Appellant relies principally on *Mann v. United States,* 5 Cir., 1963, 319 F.2d 404, *cert. denied,* 375 U.S. 986, 84 S.Ct. 520, 11 L.Ed.2d 474 (1964), a case in which this court held the giving of the same charge as the one here at issue to be erroneous where the "overall effect" therein was "to place a burden upon the defendant to produce evidence to overcome a presumption of guilt." *Id.,* 319 F.2d at 410. *Mann* offers no solace to Roberts, however, in light of *United States v. Duke,* 5 Cir., 1976, 527 F.2d 386, *cert. denied,* 426 U.S. 952, 96 S.Ct. 3177, 50 L.Ed.2d 1190 (1976), a case in which we held last year that the giving of the *Mann* charge in a context similar to that today before us did not constitute reversible error.[2] A "jury charge is to be read and tested as a whole, and not by a single isolated sentence." *Id.,* 527 F.2d at 392; *United States v. Wilkinson,* 5 Cir., 1972, 460 F.2d 725, 732. The trial judge inserted in his charge several statements [3] that placed

1. *United States v. DeCarlo,* 3 Cir., 1972, 458 F.2d 358, *cert. denied,* 409 U.S. 843, 93 S.Ct. 112, 34 L.Ed.2d 83; *United States v. Fiore,* 1 Cir., 1970, 434 F.2d 966, *cert. denied,* 402 U.S. 973, 91 S.Ct. 1659, 29 L.Ed.2d 137 (1971); *United States v. DeStafano,* 2 Cir., 1970, 429 F.2d 344, *cert. denied,* 402 U.S. 972, 91 S.Ct. 1656, 29 L.Ed.2d 136 (1971); *United States v. Biancofiori,* 7 Cir., 1970, 422 F.2d 584, *cert. denied,* 398 U.S. 942, 90 S.Ct. 1857, 26 L.Ed.2d 277.

2. The other cases relied upon by appellant, *United States v. Durham,* 5 Cir., 1975, 512 F.2d 1281, *cert. denied,* 423 U.S. 871, 96 S.Ct. 137, 46 L.Ed.2d 102; *United States v. Jenkins,* 5 Cir., 1971, 442 F.2d 429; *Helms v. United*

*States,* 5 Cir., 1964, 340 F.2d 15, *cert. denied,* 382 U.S. 814, 86 S.Ct. 33, 15 L.Ed.2d 62 (1965), illustrate the erosion, rather than the reinforcement, of the *Mann* rule.

3. For example, instructions that the law presumes a criminal defendant to be innocent of crime; that the presumption of innocence alone is sufficient to acquit a defendant unless the jury is satisfied beyond a reasonable doubt of defendant's guilt; that the burden is always upon the Government to prove guilt beyond a reasonable doubt; and that the burden never shifts to a defendant to produce any witnesses or any evidence.

the burden of proof on the Government and that we have held to be factors weighing against reversal of a conviction on the basis of the *Mann* charge. *Duke, supra,* 527 F.2d at 392–93. Finally, considering, as we must, the type of case and nature of the evidence, *id.* at 393; *Wilkinson, supra,* 460 F.2d at 733, particularly the undisputed threatening phone call made by Roberts, "the jurors were not reduced solely to presuming intent as they were in *Mann.*" *Wilkinson, supra,* 460 F.2d at 733. The giving of the challenged charge did not constitute reversible error in the instant case.

AFFIRMED.