Steven A. **MENARD**, Appellant,

v.

**STATE of Alaska**, Appellee.

No. 2865.

Supreme Court of Alaska.

May 12, 1978.

James D. Dewitt and Rita T. Allee, Birch, Horton, Bittner & Monroe, Fairbanks, for appellant.

David Shimek, Asst. Dist. Atty., Harry L. Davis, Dist. Atty., Fairbanks and Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before BOOCHEVER, C. J., and RABI-NOWITZ, CONNOR, BURKE and MAT-THEWS, JJ.

## OPINION

CONNOR, Justice.

Steven Menard was convicted of assault with a dangerous weapon, in violation of AS 11.15.220. In this appeal, Menard claims that the trial court erred in excluding certain portions of an expert's testimony, in giving the so-called *Mann* instruction to the jury, and in failing to instruct the jury as to all of the elements of assault. In addition, Menard appeals from the sentence imposed on the ground that it is excessive.

On the afternoon of September 20, 1975, Menard drank a six pack and three quart bottles of beer and smoked a quantity of marijuana. That night, while partying with Jack Bennett and several others, Menard continued to drink beer and smoke marijuana, in addition to drinking tequila.

As the evening wore on, Menard began acting strangely, and got into a fist fight with Bennett, but the fight was broken up by others present at the party. Shortly thereafter, Menard started another fight with Bennett, during which Menard stabbed Bennett three times. Bennett was taken to the hospital where he was treated for his wounds and kept under observation for 36 hours before being released. Menard was arrested the next day.

Menard was indicted and tried on the charge of stabbing with intent to wound, in violation of AS 11.15.150. Dr. Francis Whelan, a psychiatrist, testified that in his opinion, Menard had been too drunk at the time of the stabbing to have been able to form a premeditation to purposefully do wrong.

The jury acquitted Menard of the stabbing with intent to wound charge,[1] but found him guilty of the lesser and included offense of assault with a dangerous weapon. Menard was sentenced to four years' imprisonment, with two years suspended. This appeal followed.

Menard's first point on appeal is that the trial court erred in excluding that portion of Dr. Whelan's testimony relating to his administration of a sodium amytal test to Menard. Dr. Whelan had performed three tests on Menard, one of which was a sodium amytal diagnostic interview. In addition, the doctor had interviewed Menard on two separate occasions, listened to a tape recording of the grand jury proceedings, read an affidavit concerning the preliminary hearing, inspected photographs of Menard depicting wounds allegedly received in the fight with Bennett, and read copies of Alaska State Department of Safety investigation forms from Menard's file prior to reaching his opinion as to Menard's inability to form a specific intent. The prosecutor objected to the admission of evidence regarding the sodium amytal test, claiming that mention of the so-called "truth serum" would be inflammatory and irrelevant. Defense counsel replied that the purpose of the testimony was to establish that the sodium amytal test was one of the diagnostic tools used by Dr. Whelan to reach his diagnosis. The judge then asked the doctor whether he would be able to render an opinion without resorting to the sodium amytal test. The doctor replied that he could do so, and that excluding the sodium amytal test, his opinion would still be that the defendant was too drunk to form a specific intent. The judge then ruled that Dr. Whelan's testimony would be permitted, but without mention of sodium amytal.

■ The decision to exclude mention of the sodium amytal test was within the discretion we have afforded trial courts in controlling expert testimony. *See State v. Guinn*, 555 P.2d 530, 544 (Alaska 1976); *Grasle Electric Co. v. Clark*, 525 P.2d 1081, 1085 (Alaska 1974); *Burgess Construction Company v. Hancock*, 514 P.2d 236, 237 (Alaska 1973). Further, the trial court may exclude relevant evidence if it finds that its probative value is outweighed by the risk that the evidence will have a prejudicial effect on the jury, confuse the issues, or mislead the jury. *Newsom v. State*, 533 P.2d 904, 908 (Alaska 1975); *Burgess Construction Company v. Hancock*, 514 P.2d 236, 237 (Alaska 1973). We find no error in the trial judge's exclusion of this portion of Dr. Whelan's testimony.

■ Menard next contends that the giving of the following instruction constituted reversible error:

"It is reasonable to infer that a person ordinarily intends the natural and probable consequences of acts knowingly done or knowingly omitted. So unless the contrary appears from the evidence, the jury may draw the inference that the accused intended all the consequences which one standing in like circumstances and possessing like knowledge should reasonably have expected to result from any act knowingly done or knowingly omitted by the accused."

This instruction is identical to that given in *Mann v. United States*, 319 F.2d 404 (5th Cir. 1963), *cert. denied*, 375 U.S. 986, 84 S.Ct. 520, 11 L.Ed.2d 474 (1964). Dr. Mann had been charged with wilfully attempting to evade payment of income taxes by omitting items of taxable income from his returns. Mann's defenses were that his accountant had been negligent and that bonds purchased by him had been bought with money given to him by his father. The Fifth Circuit found that giving the above-quoted instruction constituted plain error, and reversed Mann's conviction. That court held the words "so unless the contrary appears from the evidence" to be an impermissible shifting of the burden of proof from the prosecution to the defendant to prove lack of intent, in conflict with the "overriding presumption of innocence with

1. In order to have found Menard guilty of this offense, the jury would have had to find that Menard had been capable of forming a specific intent.

which the accused is endowed under the law." 319 F.2d at 409–410. The United States Supreme Court declined to hear the *Mann* case, in spite of a conflict between the Fifth and Ninth circuits on this issue.[2]

Other circuits[3] have been critical of the *Mann* instruction but, in the years immediately following the *Mann* decision, most courts held that reversal was not required when the instructions on intent, taken as a whole, were adequate to insure that the jury would not be misled.[4]

More recently, however, the Second Circuit reversed a conviction for uttering forged checks because the *Mann* instruction had been given, even though defense counsel had not objected, stating that

" . . . the 'natural and probable consequences' charge, particularly when . . . it contains the phrase 'unless the contrary appears from the evidence,' is a burden-shifting charge which has the potential for misleading the jury with respect to the requirement that the government must prove every element of an offense beyond a reasonable doubt."

*United States v. Robinson,* 545 F.2d 301, 306 (2d Cir. 1976). The Ninth Circuit and the authors of a standard text of federal jury instructions have labeled the *Mann* instruction "an invitation to reversal."[5]

Meanwhile, the Fifth Circuit seemed to be backing away from its *Mann* decision, distinguishing *Mann* in *Helms v. United States,* 340 F.2d 15 (5th Cir. 1964), *cert. denied,* 382 U.S. 814, 86 S.Ct. 33, 15 L.Ed.2d 62 (1965), and holding in other cases that the trial court cured its mistake by following the erroneous charge with instructions which avoided the vice.[6] The *Mann* holding was eroded still further by application of an "all facts and circumstances" test,[7] and by holding that the *Mann* charge was cured by other proper instructions, even though they were remotely placed in relation to the *Mann* instruction.[8]

Finally, in *United States v. Chiantese,* 560 F.2d 1244 (5th Cir. 1977), the Fifth Circuit granted en banc review in order to clarify that circuit's position on the *Mann* instruction. In *Chiantese* the court directed all trial courts in the circuit to cease using

---

**2.** In *Sherwin v. United States,* 320 F.2d 137 (9th Cir. 1963), *cert. denied,* 375 U.S. 964, 84 S.Ct. 481, 11 L.Ed.2d 420 (1964), which was decided two weeks prior to *Mann,* the Ninth Circuit affirmed a conviction for income tax evasion and for filing false returns. The same instruction which led to reversal in *Mann* was given in *Sherwin,* over defendant's objection, but the Ninth Circuit held that considered as a whole, the instructions on wilfulness and intent correctly stated the law and could not have misled the jury, or have been prejudicial to defendant. 320 F.2d at 150–51.

**3.** *See, e. g., United States v. Barash,* 365 F.2d 395, 402–03 (2d Cir. 1966), *cert. denied,* 396 U.S. 832, 90 S.Ct. 86, 24 L.Ed.2d 82 (1969); *Imholte v. United States,* 226 F.2d 585, 591 (8th Cir. 1955).

**4.** *McCarty v. United States,* 409 F.2d 793, 799–801 (10th Cir. 1969), *cert. denied,* 396 U.S. 836, 90 S.Ct. 95, 24 L.Ed.2d 87 (1969); *United States v. Tijerina,* 407 F.2d 349, 355 (10th Cir. 1969), *cert. denied,* 396 U.S. 843, 90 S.Ct. 76, 24 L.Ed.2d 93 (1969); *United States v. Wilkins,* 385 F.2d 465, 473 (4th Cir. 1967), *cert. denied,* 390 U.S. 951, 88 S.Ct. 1043, 19 L.Ed.2d 1144 (1968); *Cohen v. United States,* 378 F.2d 751, 755–56 (9th Cir. 1967), *cert. denied,* 389 U.S. 897, 88 S.Ct. 217, 19 L.Ed.2d 215 (1967); *Moore v. United States,* 375 F.2d 877, 880–82 (8th Cir.

1967), *cert. denied,* 389 U.S. 844, 88 S.Ct. 92, 19 L.Ed.2d 110 (1967); *United States v. Releford,* 352 F.2d 36, 40 (6th Cir. 1965), *cert. denied,* 382 U.S. 984, 86 S.Ct. 562, 15 L.Ed.2d 473 (1966); *United States v. Denton,* 336 F.2d 785, 788 (6th Cir. 1964). In these decisions, the courts were examining the alleged erroneous instruction under the plain error standard of Rule 52(b), Fed.R.Crim.P.

**5.** *Cohen v. United States,* 378 F.2d 751, 755 (9th Cir. 1967), *cert. denied,* 389 U.S. 897, 88 S.Ct. 217, 19 L.Ed.2d 215 (1967); Devitt and Blackmar, *Federal Jury Practice and Instructions* § 13.06, at 277 (2d ed. 1970).

**6.** *United States v. DeSimone,* 452 F.2d 554 (5th Cir. 1971), *cert. denied,* 406 U.S. 959, 92 S.Ct. 2067, 32 L.Ed.2d 346 (1972); *United States v. Jenkins,* 442 F.2d 429 (5th Cir. 1971).

**7.** *United States v. Wilkinson,* 460 F.2d 725 (5th Cir. 1972).

**8.** *United States v. Durham,* 512 F.2d 1281 (5th Cir. 1975), *cert. denied,* 423 U.S. 871, 96 S.Ct. 137, 46 L.Ed.2d 102 (1975); *see also United States v. Duke,* 527 F.2d 386 (5th Cir. 1976), *cert. denied,* 426 U.S. 952, 96 S.Ct. 3177, 49 L.Ed.2d 1190 (1976).

the *Mann* instruction, or others like it which could be reasonably interpreted as shifting the burden to the accused to produce proof of innocence. 560 F.2d at 1255. The court further stated that the error in giving such burden-shifting charges would not be overcome because other phrases correctly defining the proper burden of proof were included in the instructions. *Id.* However, the majority in *Chiantese* held that the giving of the *Mann* instruction, whether objected to or not, was not the type of error which would automatically produce reversal. *Id.* Instead, the court stated that if the error should recur, its harm to the accused would be weighed in the context of each case. The court made clear that such weighing would not include consideration of whether a defective charge had been cured by prior or subsequent instructions. *Id.*

We are persuaded by the extensive criticism which this instruction has evoked. We hold that the giving of the *Mann* instruction is error, and we admonish Alaska trial courts to cease using it. Like the Fifth Circuit, however, we decline to hold that this error will always be deemed reversible.

■■■ In the instant case, the jury acquitted Menard of the specific intent charge, stabbing with intent to wound, apparently believing Menard's diminished capacity defense, but found him guilty of the general intent crime of assault with a dangerous weapon. The jury did not have to find any specific intent to do any particular kind or degree of harm to the victim in order to find Menard guilty of assault with a dangerous weapon. *See Thompson v. State,* 444 P.2d 171, 174 (Alaska 1968); *Burke v. United States,* 282 F.2d 763, 768 (9th Cir. 1960). The instruction regarding proof of intent thus became largely irrelevant once the jury had acquitted the defendant of the specific intent charge.[9] Un-

der the circumstances of this case, we conclude that the error was "harmless beyond a reasonable doubt." *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705, 711 (1967).

■■ Menard also maintains that the trial court erred by failing to instruct the jury as to all of the elements necessary to a conviction for assault with a dangerous weapon. He claims that reasonable apprehension of bodily harm by the victim is an element which must be included in the definition of assault, citing an Oregon case, *State v. McLennen,* 16 Or. 59, 16 P. 879, 880 (1888).

The Alaska statutes fail to define the word "assault." Appellant is, therefore, correct in assuming that we will look to the interpretation of the Oregon Supreme Court prior to 1900 when construing Alaska statutes which originated in Oregon, (*see Nicholson v. Sorensen,* 517 P.2d 766, 770 (Alaska 1973)), as statutes are presumed to have been adopted with the interpretations which had been placed upon them, prior to their Alaska enactment, by the highest court of the states from which they were borrowed. *City of Fairbanks v. Schaible,* 375 P.2d 201, 207–08 (Alaska 1962). In the annotations to AS 11.15.220, the commentator notes the similarity between the Alaska and Oregon enactments, and cites the 1888 *McLennen* case for the proposition that assault is "any unlawful physical force, partly or fully put in motion, creating a reasonable apprehension of immediate physical injury to a human being." However, the commentator apparently did not read the *McLennen* case carefully, for the Oregon Supreme Court in that case offered two alternative definitions of the word assault:

"'An assault is any unlawful physical force, partly or fully put in motion, creating a reasonable apprehension of immediate physical injury to a human being; as

9. It should be noted that Menard did not deny stabbing Bennett. Although AS 11.70.030 provides that the jury may, as it did here, consider the defendant's intoxication when the existence of a specific intent is a necessary element to a crime, the statute clearly states that "[a]n act committed by a person while in a state of voluntary intoxication is not less criminal be-

cause he was intoxicated." AS 11.70.030(a). We decline to hold, as appellant urges us to do, that intoxication ought to be considered with respect to the general criminal intent necessary to the commission of assault with a dangerous weapon. Nor are we willing to abandon the classic distinction between specific and general intent crimes, as suggested by appellant.

raising a cane to strike him, pointing in a threatening manner a loaded gun at him, and the like.' 2 Bish.Crim.Law, § 23. Or, more tersely, an assault is thus defined by Wharton: 'An assault is an intentional attempt to do an injury to another.' 2 Whart.Crim.Law, § 1241."

16 P. at 880.

We do not read this statement as requiring the element of reasonable apprehension in every assault. Our interpretation is bolstered by a later Oregon case, *State v. Godfrey,* 17 Or. 300, 20 P. 625 (1889), in which the Oregon Supreme Court expressly held that apprehension was not an essential element of the crime of assault:

"I think these authorities clearly show that to constitute an assault there must be an intentional attempt to do injury to the person of another by violence, and that such attempt must be coupled with a present ability to do the injury attempted. It is equally manifest that the element of fear or apprehension on the part of the person against whom the attempt is made cannot be controlling, or in any way influence the conclusion, for the reason that such person may be assaulted and be wholly unconscious of the injury."

20 P. at 628. As the *Godfrey* case was decided after *McLennen* and before the Oregon statute was adopted for Alaska, we accept its holding that neither fear nor apprehension are necessary elements in the crime of assault.[10] In any event, the element of fear or apprehension would play no part in a case such as this where actual physical injury results from the assault. The trial judge did not err in giving an instruction which omitted this element from the definition of assault.[11]

10. The Oregon Supreme Court has not been entirely consistent on this point through the years, as some cases have included the element of fear in the definition of assault, and others have not. *See State v. Wilson,* 218 Or. 575, 346 P.2d 115 (1959), and cases cited at 119–120 therein. However, *Godfrey* appears to be the last word on this subject by the Oregon high court prior to Alaska's adoption of the Oregon statute, and interpretations of the statute by the Oregon court after Alaskan adoption are

Menard's final contention is that the sentence imposed was excessive. As we said in *State v. Chaney,* 477 P.2d 441, 444 (Alaska 1970), we will not overturn a sentence unless the trial court was "clearly mistaken" in imposing the sentence which it did.

The maximum penalty for this offense is ten years. We recently upheld a five-year sentence for assault with a dangerous weapon where the defendant had no previous felony convictions. *Dawson v. State,* 557 P.2d 142 (Alaska 1976). In light of our decision in *Dawson,* in which we reemphasized that an assault with a dangerous weapon is considered in Alaska as among the most serious crimes, and after examining the record in the instant case under the principles enunciated in *Chaney, supra,* we do not find that the trial court was clearly mistaken in imposing a four year sentence with two years suspended.

AFFIRMED.

merely persuasive authority, rather than presumptively correct. 2A C. Sands, *Sutherland Statutory Construction* § 52.02, at 329–30 (4th ed. 1973).

11. Two instructions were given regarding the essential elements of the crime of assault. One instruction contained no mention of the element of fear. In the other, mention of fear was tacked onto the end of the instruction, apparently as an afterthought.