UNITED STATES of America,
Plaintiff–Appellee,

v.

John Ellis SUTTON,
Defendant–Appellant.

No. 79–5681.

United States Court of Appeals,
Fifth Circuit.
Unit A

Feb. 2, 1981.

W. B. "Bennie" House, Jr., Houston, Tex., for Sutton.

Carl Walker, Jr., M. Angela Flores, Asst. U. S. Attys., Houston, Tex., for plaintiff–appellee.

Before COLEMAN, CHARLES CLARK and REAVLEY, Circuit Judges.

COLEMAN, Circuit Judge.

Defendant John Ellis Sutton was found guilty of conspiracy to dispense and distribute Schedule II controlled substances in violation of 21 U.S.C., Section 846.[1] Sutton's co–defendant, Johnny Lester Randolph, was also convicted of the same charge but abandoned his appeal in return for a plea bargaining agreement. Sutton challenges his conviction on the ground that the jury charge shifted the burden in violation of his Sixth Amendment rights. He also asserts that a warrantless search of a paper sack and a briefcase found in the automobile, which he was driving, violated his Fourth Amendment rights.

On August 1, 1978, Houston police officer A. D. Dugger, while off–duty, but who had previous knowledge of two affidavits concerning illicit activities of Fisher's Pharmacy and one Dr. Edwards, saw defendant Sutton and another man at the Fisher Pharmacy in Pasadena, Texas. Officer Dugger saw the other man, whom he did not recognize, purchase two prescriptions, one for $90.00 and one for $108.00. He saw Sutton, whom he recognized by sight but not by name, walk up to the counter when a name was called. The officer followed the other man outside and saw him get into a 1976 Cadillac with three other people. Thereafter, officer Dugger returned to his car, radioed for assistance and ran a license check on the Cadillac, *which was found to be registered to the wife of Dr. Edwards.*

In answer to officer Dugger's phone call, Lt. Sidney Smith of the Pasadena Police Department arrived on the scene and observed the Cadillac leaving the pharmacy. Sutton was driving. Lt. Smith followed the Cadillac and had it stopped by a marked patrol car. After all the occupants were out of the car and checked for identification, Lt. Smith saw a Fisher Pharmacy sack in plain view, lying on the front floorboard. The sack turned out to be filled with prescription bottles containing Dilaudid and Tuinal. Lt. Smith saw that the names on the prescription bottles were not those of the occupants of the car, whereupon he arrested them for possession of a controlled substance. Lt. Smith then opened the automobile trunk, found Sutton's briefcase, searched it, and found it to contain papers later designated as government's exhibits 9 and 10 at trial.[2]

The only other evidence offered by the government which might link Sutton to Dr. Edwards, or to co–defendant Johnny Randolph, or to the alleged conspiracy, was testimony from Edwards' secretary that a man who called himself "Sutton" telephoned the doctor's office several times, plus testimony from another Edwards employee that Sutton and Randolph once met at a downtown office.

### The Mann Charge

At trial, in pertinent part, the jury was charged as follows:

As a general rule, it is reasonable to infer that a person ordinarily intends all the natural and probable consequences of acts knowingly done or knowingly omitted. So, unless the evidence in the case leads the jury to a different or contrary conclusion, the jury may draw the inference and find that the accused intended all the natural and probable consequences which one, standing in like circumstances, and possessing like knowledge should reasonably have expected to result from any act knowingly done or knowingly omitted by the accused.

Sutton adopted Randolph's timely objection at trial, stating the grounds in accord-

---

1. Section 846 states:

 Any person who attempts or conspires to commit any offense defined in this subchapter is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

2. The briefcase contained a list bearing the names of husbands, wives and their addresses in the Houston area and note paper containing mathematical computations. Danny Hines whose name and address were on the list testified at trial.

ance with the requirement of Federal Rule of Criminal Procedure 30.[3]

It has been repeatedly held that the *Mann* charge in effect may shift the burden of proof from the prosecution to the defendant. It was condemned by this Court as early as *Mann v. United States*, 319 F.2d 404 (5th Cir., 1963), *cert. denied*, 375 U.S. 986, 84 S.Ct. 520, 11 L.Ed.2d 474 (1964). Nevertheless, trial courts continued to give the charge, with the result that we recently traced the history and continued use of the *Mann* charge in this Circuit in *United States v. Chiantese*, 560 F.2d 1244 (5th Cir., 1977) (en banc). In *Chiantese* the Court emphatically stated:

> No district court in this circuit shall include in its charge to the jury an instruction on proof of intent which is couched in language which could reasonably be interpreted as shifting the burden to the accused to produce proof of innocence.
>
> *Id.* at 1255.

Furthermore, it was declared that no longer would we absolve such errors by looking to the whole charge for corrective phrases.

This should have been a formidable warning to prosecutors to have no more to do with seeking and using the *Mann* charge.

The tone of the banishment was tempered, however, with the observation that the use of the charge would not trigger *automatic reversal*. It was said:

> We refuse to classify the giving of a charge in violation of paragraph 1, *whether objected to or not*, as the type of error which will automatically produce reversal. If, despite our action today, the error should recur, the weighing of its harm to the accused shall remain a judicial matter to be resolved in the context of each case where it occurs. Such weighing, however, shall not include consideration of whether a defective charge

has been cured by prior or subsequent statements. (Emphasis added).

*Id.* at 1255.

It would appear that what the Court really was saying is that it was well aware of the *harmless error rule* which applies to many situations in which there is non–compliance with Constitutional guidelines. Otherwise, it would make no sense to blister this instruction in no uncertain terms and in the same breath to say that if the charge is given the harm will be evaluated before there is a reversal. The *spur* is that in making such an evaluation no attention will be paid to curative language which may appear elsewhere in the instructions.

So the question remains: Did the *Mann* charge harm Sutton's defense–could it have been read to impose a burden on him to establish his innocence?

The evidence established that Sutton was in the drugstore at a time when a companion paid an inordinately high price for two prescriptions; that he followed the companion to a Cadillac and thereafter took the wheel. The controlled substances were then found on the front floorboard of the car, in a sack which came from the pharmacy. Therefore, any conspiracy, with the intent to participate in dispensing and distributing controlled substances, depended on inferences which the jury might reasonably draw beyond a reasonable doubt from the recited occurrence.

We are constrained to hold, and do hold, that in *this* factual and legal context the use of the *Mann* instruction was reversible error. There was association but with no spoken proof of an agreement; Sutton was driving a car, also occupied by others, in which contraband was found. That contraband had been acquired in Sutton's presence. The proof was sufficient to go to the jury, but it should have gone there without the burden of the *Mann* charge.

**3.** FRCP 30 reads in pertinent part:

... No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury and, on request of any party, out of the presence of the jury.

## The Search

Sutton moved to suppress the evidence and the testimony growing out of the warrantless search of the Cadillac he was driving on August 1, 1978. The motion was denied and the contents of the paper sack, found on the front floorboard, and the contents of the briefcase, found in the trunk, as well as the testimony derived therefrom, were admitted in evidence.

## The Stop

 The stop of the Cadillac was a proper investigative stop based upon the reasonable suspicion that the occupants were engaged in criminal enterprise, *United States v. Allison*, 616 F.2d 779 (5th Cir., 1980). Lt. Smith's prior knowledge of the Edwards investigation and knowledge of Officer Dugger's observations in the pharmacy were enough to constitute "reasonable suspicion". In *Allison, supra*, we said:

> A police officer may make an investigative stop of an individual if he reasonably suspects that the individual is involved in criminal activity. Probable cause is not required to justify an investigative stop; reasonable suspicion is sufficient. [Citing] *United States v. Hall*, 557 F.2d 1114, 1116 (5th Cir., 1977). Nor was the stop unreasonable simply because [the officer] acted on hearsay knowledge. Reasonable suspicion may exist on the collective knowledge of the police when there is reliable communication between the officer supplying the information and the officer acting on that information. [Citations omitted].

## The Sack

The search of the paper sack is a different question. The Supreme Court has generally recognized an "automobile exception" to the requirement that police secure a warrant before conducting a search. See, e. g., *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *Carroll v. Unit-*

ed States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). This principle has been limited, see *Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979); *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977). In *Sanders* the Court disapproved a warrantless search of luggage taken from the trunk of an automobile that had been lawfully stopped. The Court, stressing expectation of privacy, reasoned that the mere fact that personal luggage is taken from an automobile does not demonstrate the necessity of a warrantless search. "[T]he reasons for not requiring a warrant for the search of an automobile do not apply to searches of personal luggage taken by police from automobiles", *Sanders*, 442 U.S. at 765, 99 S.Ct. at 2593–94. However, the Court in footnote 13 stated:

> Not all containers and packeges found by the police during the course of a search will deserve the full protection of the Fourth Amendment. Thus, some containers (for example a kit of burglar tools or a gun case) by their very nature cannot support any reasonable expectation of privacy because their contents can be inferred from their outward appearance. Similarly, in some cases the contents of a package will be open to "plain view" thereby obviating the need for a warrant. *Id.* at 764 n. 13, 99 S.Ct. at 2593, n. 13.

In a recent case, *United States v. Rigales*, 630 F.2d 364 (5th Cir., 1980), this Court held that the search of a zippered case found in plain view on the floorboard of a lawfully stopped automobile was improper, citing *Sanders*. However, this decision rested on the premise that "[n]othing in the trial transcript demonstrates that the zippered case was anything other than an ordinary briefcase that was simply heavy and bulging".

 In the instant case the paper sack was obviously from Fisher's Pharmacy[4] and

---

4. On direct examination, Lt. Smith testified as follows:

> Q. [Government Attorney]: Then what did you do?

> A. Then I looked inside the car and I saw a sack lying on the floorboard, the front seat.
> Q. Okay.

its contents could be inferred from the first hand knowledge that it had been brought directly from the pharmacy under unusual circumstances, *Sanders*, 442 U.S. at 764, n. 13, 99 S.Ct. at 2593, n. 13. Accordingly, we hold that the warrantless seizure and examination of the contents of this paper sack, lying with a corresponding indifference toward any expectation of privacy, in full view on the front floorboard of the automobile was not precluded by Fourth Amendment principles.

### The Briefcase

*Sanders* dictates a contrary result as to the briefcase taken from the automobile trunk. The government argued the presence of exigent circumstances [5] but this is without support in the record. The contents of the briefcase located in the trunk, searched without a warrant, and the fruits of that search should have been suppressed.

REVERSED and REMANDED.

A. And I looked inside the sack and I found a number of prescription bottles filled with Dilaudid and one with Tuinal and I noticed . . .

Q. Would that sack have any inscription on it as coming from a pharmacy?

A. Fisher Pharmacy, yes, sir.

**5.** The Supreme Court in *Sanders* stated that "[t]here may be cases in which the special exigencies of the situation would justify the warrantless search of the suitcase. [Citations omitted]. Generally, however, such exigencies will depend upon probable contents of the luggage and the suspect's access to those contents–not upon whether the luggage is taken from an automobile". 442 U.S. at 763, 99 S.Ct. at 2593, n. 11.